## Thornton, et al. v. White, et al.

(Decided February 17, 1915.)

### Appeal from Marion Circuit Court.

1. Schools and School Districts—Taxes—Apportionment Between White and Colored Schools.—Where taxes are levied by a graded white common school district upon the property of a railroad or bridge company within such district, they, when collected, must . be apportioned between it and any graded common school for colored pupils having the same boundary as the white district, as provided for in Section 4101 Kentucky Statutes.

2. Schools and School Districts—Trustees of Graded Common Schools—Expenditures.—The trustees of a graded common school district are restricted in the expenditure of the public moneys coming to them, to such purposes only as are authorized by the laws governing the management and control of the schools.

3. Schools and School Districts—Truant Officer—Payment of Salary.—A graded white school district having the same boundary as a graded colored school district, can not employ a truant officer and require the colored district to pay any part of his salary, although he may have performed service for both the white and colored school.

H. S. McELROY for appellants.

C. C. BOLDRICK and W. H. SPRAGENS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

It is gathered from the pleadings in this case that the city of Lebanon, which is a city of the fourth class, had organized a system of graded free common schools for the education of white and colored children resident in the city, and which had been organized in accordance with Section 3588 of Kentucky Statutes. It is not clear from the pleadings as to whether or not the city council, after the enactment of Section 3588a of Kentucky Statutes, by ordinances, adopted by the general council

of the city, organized a graded free common school for the white pupils and a graded free colored school for the colored pupils, as it is provided that it may do by Section 3588a. The petition, however, describes the appellees as the board of trustees of the graded free common school for colored pupils, and the appellants as the board of trustees for the graded free common school for white pupils, and that the boundaries for the two districts are the same, and that they are the same as the limits of the city. These allegations are not controverted by the answer, and there being no provision of the statute authorizing the existence of such a state of facts except Section 3588a, *supra,* we presume that the city council, in accordance with and by virtue of the provisions of that statute, organized the two school districts. The ordinances by which the two districts were established, although referred to in the answer, and made a part of it, are not copied into the record.

Section 3596 of the Kentucky Statutes, and which is a part of the charter of the cities of the fourth class, provides that the board of education in cities of the fourth class shall provide and maintain a building and teachers for schools for the black pupils, but it seems that under that section the board of education, who has charge of schools in cities of the fourth class, and provided for by Section 3588, *supra,* is the authority which must control and manage such schools, unless the city council has provided for a graded free common school for white persons and a graded free common school for colored persons, as provided for in Section 3588a, *supra,* in which event each of the said schools passes into the control and management of a board of trustees provided for in said statute, and the board of education provided for in Section 3588 no longer has control of such schools, if it continues to exist, because 3588a provides that a system of schools may be provided for, as permitted by that section, and that each school shall be governed and controlled by a board of six trustees, elected or appointed, as now provided by general law, for the government of graded free white and colored schools. Said section, further, provides that each of the schools shall be maintained by its pro rata share of the State school fund, which shall be paid direct to the trustees or their treasurer, and that the city council shall, by its ordinances, prescribe the maximum rate of taxation which

may be levied for the white school upon the polls and property of white persons and corporations within the city, and by the colored board of trustees upon the polls and property of colored persons within the city. The statute also provides that the taxes raised from the polls or property of any white person or corporation shall not be used for the support of the graded free common school for colored pupils, nor the tax raised from the polls or property of the colored people shall not be used for the maintenance of the white school. This statute further provides that after the system of graded free white and colored common schools has been established, as provided by that statute, they shall be managed, maintained, and controlled as provided for by the general law for the control, management, and maintenance of graded schools.

The pleadings show that for the years 1909, 1910, 1911, 1912, and 1913, a tax for school purposes was levied upon the property of persons and corporations situated within the boundaries of the school districts and the city, and was collected and all of it paid to the appellants as the board of trustees for the graded free white common school. It does not appear what authority levied the taxes, but we presume it was done by appellants, and within the authority given it by the city council by ordinances fixing the maximum rate of taxation, which it was authorized to levy and collect as provided for by Section 3588a, *supra*. Included in the tax upon corporations was a tax for each of these years levied upon and collected from the property of the Louisville & Nashville Railroad Company, two branches of which extend into and through the districts, one of which is the Louisville & Knoxville branch, and the other called the Cumberland & Ohio branch of the Louisville & Nashville system.

The appellees, as the board of trustees for the graded free common school for colored pupils, brought this suit against the appellants, as the board of trustees of the graded free common school for white pupils, and against the Louisville & Nashville Railroad Company to recover such a proportion of the taxes collected from the company as the colored pupils in the city bear to the entire number of pupils in the district within the school age. The appellants, by answer, controverted the legal right of appellees to receive any part of these taxes, and likewise alleged that for those years it had employed a truant

officer who did services for both schools, alike, and for whose services it was required to pay, and asked to have set off against any recovery which appellees might make against it such an amount of the total sum paid to this truant officer in the proportion that the number of colored children in the districts bears to the number of all pupil children in the districts. The Louisville & Nashville Railroad Company filed an answer denying the right of appellees to recover, and alleging that it had paid the taxes to the city of Lebanon, and made its answer a cross-petition against the appellants and the city of Lebanon, and asked that, in the event there should be any recovery by appellees against it, that it have a judgment for a like sum against appellants and the city of Lebanon, upon the ground that it had paid the taxes to the city under a mistake of law and of fact.

The appellants filed a special demurrer to the petition of the appellees, insisting that there was a defect of parties plaintiff, in that the suit was not brought in the name of the Commonwealth for the use and benefit of the appellees, and that there was a defect of parties defendants, in that the city of Lebanon was not made a party defendant. The appellants also filed a general demurrer to the petition. The Louisville & Nashville Railroad Company filed a general demurrer to the petition, and the city of Lebanon filed a general demurrer to the cross-petition of the railroad company. Upon a hearing the court overruled the demurrers filed by the appellants, but the demurrer of the railroad company seems not to have been passed upon, neither was the demurrer of the city of Lebanon to the cross-petition of the railroad company passed upon. The appellees demurred generally to the answer of the appellants and also to the answer of the railroad company. The court sustained the demurrer to the answer of appellants, but the one to the answer of the railroad company was not passed upon nor disposed of.

The appellants failing to plead further, the court rendered judgment against them for the amounts sued for, proper objections were made and exceptions taken by the appellants to the judgments of the court.

The appellants complain of the action of the court in overruling their demurrers to the petition, and likewise sustaining the demurrer to their answer, and they appeal to this court.

Section 4470, Kentucky Statutes, provides that the trustees of a graded common school may sue and be sued in the name of the board of trustees for the district, and a suit in the name of certain persons as the trustees of a graded free common school district is a substantial compliance with the statute, and it does not appear that the city of Lebanon has any interest in the controversy, and for these reasons the special demurrer of appellants does not seem to have been well taken.

The demurrer of appellants to the petition will determine the right of the appellees to recover of appellants the portion of the taxes collected from the railroad sued for.   Section 4101, Kentucky Statutes, is as follows:

"The provisions of this law shall not be construed to apply to any colored school district: Provided, That the same rate of taxation assessed against the real estate of any railroad or bridge company, or corporation in any graded school district or common school district, in any year, shall be assessed against all of the taxable property in such district, and the railroad or bridge tax, when collected, shall be paid over to the county superintendent of the county in which the district school house wherein the tax assessed shall be situated, and shall constitute and be held by the county superintendent as a graded or common district school fund; and the said fund shall be apportioned and distributed by the county superintendent between the white graded common school or white common school district wherein said tax shall be collected and any colored common school district which shall be located over the same boundary; the distribution shall be in the same ratio that the whole number of white children of pupil age and the whole number of colored children of pupil age residing in the district shall bear to the whole number of children, white and colored, residing in the district wherein such tax shall be collected."

This court, construing Section 4101, *supra,* in the case of Harrodsburg Educational District No. 28 v. Trustees of Colored School District No. 1, 105 Ky., 675, held that where a railroad tax was collected from a railroad company, under a levy made by a white school district, it must be apportioned to the white and colored school districts when the boundary of the two districts is the same, in proportion to the pupils in the district.   In that case no tax was levied and collected by the colored district at

all, even upon the property of the colored people, and the opinion further holds that there was no provision of the law authorizing a. colored school district to levy upon or collect taxes from the property of a railroad company within the district.

In the case of Hickman College v. Trustees District A, et al., 23 R., 1271, taxes were collected from the property of a railroad company by a white common school district in a town of the fifth class, which was not authorized to maintain a graded common school, and it was held that such taxes must be apportioned between such white school district and the colored common school district occupying the same territory. The same was held by this court in the case of Board of Education of Somerset Public Schools v. Trustees Colored School District No. 1, 18 R., 103. The counsel for appellant, however, insists that these opinions were rendered previous to the year 1904, and before the enactment of Section 3588a, *supra,* which became a law March 21st, 1904. It is insisted that by reason of the enactment of this law and its providing that a tax raised from the property or poll of any white person or from any corporation shall not be used for the support of a graded free colored common school; and that this statute embraced railroad corporations as well as all other kind of corporations, and for that reason the appellees were not entitled to any portion of the taxes collected from the railroad within the district, and which were sued for.

Section 4101, *supra,* which provides that the taxes collected from railroads or bridges shall be apportioned between the white and colored pupils in the district, was a portion of the statute laws of this State, included in the revision made after the adoption of the present constitution in 1893, and has continued to be a portion of the statute laws of the State ever since.

On March 15th, 1906, subsequent to the enactment of Section 3588a, the General Assembly, in adopting a general law relating to revenue and taxation, included Section 4101 in the statute adopted at that time, in the exact language with which it had been clothed theretofore, and re-enacted it. Sections 4099 and 4100 were re-enacted at the same time, and the one requires the county school superintendent to furnish the railroad companies in his county with the boundaries of the school districts, through which they pass, and the other provides that the

taxes levied against the railroad by any common school district shall be paid to the superintendent of schools. The Sections 4099, 4100, and 4101, *supra,* remain in full force to the present time. This is the latest expression of the legislative will upon that subject, and must necessarily supersede any prior legislative enactments to the extent that any prior enactment is in conflict with it.

It will also be noted that in the statute relating to graded common schools, which is Article 10, Chapter 113, Kentucky Statutes, in providing the sources of revenue for the graded common schools for white persons, it provides that the taxes may be levied for school purposes upon property of every kind and character having value and owned by any white person, company, or corporation.

Section 4487, Kentucky Statutes, provides that the provisions of Article 10, Chapter 113, *supra,* shall apply to such graded common school districts as may be organized by the colored people of the State, and that such districts or graded schools may be organized by them in all cases, the same as the white districts therein provided for may be organized, and that the word "colored" shall be substituted for the word "white" wherever it occurs in the law, so as to make all the sections of Art. 10, Chap. 113, apply to colored schools as well as to white schools, and with equal force. The section, *supra,* further provides that the property of white persons shall not be taxed to maintain any graded common school for colored pupils; nor shall the property of any colored person be taxed for the benefit of any graded common school for white pupils.

This court held, in the case of Board of Education of Somerset v. Trustees Colored District No. 1, *supra,* construing Sections 4101 and 4487, that taxes for school purposes levied upon railroads shall be apportioned between the white and colored schools, where boundaries were the same, and, further, that the stock owned by colored persons in private corporations is liable only to be taxed for the colored schools, and that owned by white persons only for white schools. This opinion was, however, previous to the enactment of Section 3588a. As to the effect of the provisions of Section 3588a, as regards the levying of taxes for school purposes upon corporations other than railroads and bridge companies, is not before us, and we make no determination in re-

gard to same, and, although the appellants, by their answer, allege that the Louisville & Nashville Railroad Company is owned exclusively by white persons, the legislative intent is very clear that taxes levied by a white graded common school district upon the property of a railroad must be apportioned between the white district and the colored school district, if their boundaries are the same. Such taxes should be paid to the county superintendent of schools, and he should apportion them between the districts entitled to them, as provided in Section 4101. In the instant case it appears that the taxes sued for were paid direct to the board of trustees of the graded free white common school, but this cannot affect the liability of such board, as it is liable to the appellees for the proportional part of same to which appellee board is entitled under the law. For these reasons the general demurrer of appellants to the petition of the appellees should have been overruled.

The answer, counter-claim, and set-off present no defenses to the petition, and the complaint of appellants because the court sustained a demurrer to it is not well founded. The answer does not traverse the amounts of the taxes sued for, nor any of the facts necessary to enable the appellants to recover upon the allegations of their petition. The counter-claim plead is, in substance, that appellants employed a truant officer, who did service for the colored school as well as for the white school, and that appellants paid him for his services, and that appellees should bear such a proportion of such sum as the number of colored pupils in the district bears to the whole number of pupil children in both districts. The appellees, as the board of trustees for the colored public school, in the disbursement of the public moneys which come to them are not authorized to expend it for any purposes, except for such purposes as are authorized by the statutes governing their election or appointment, and the duties pertaining to their offices, in the control and management of the school for which they are trustees. The same rule governs the appellants. They are both restricted to such expenditures and for such purposes as the laws require. It is true that the board of education in cities of the fourth class are required to employ a truant officer and to pay him out of the tax levy for such cities for school purposes. This is the board of education provided for in Section 3588, and does not apply

where there is no board of education in cities of the fourth class which have accepted and put into execution the provisions of Section 3588a. An examination of the statutes relating to truant officers fails to disclose any authority for the trustees of a graded free common school for white persons to employ a truant officer to do service for a colored school, and to pay him for his services out of the funds set apart for such a school; neither can anything be found authorizing the trustees of a graded free common school for white persons to employ such an officer to perform services for such a colored school and pay him for his services out of funds belonging to the white school. The trustees of the colored school would have no way to prevent the employment by the trustees of the white school of a truant officer, and would be obliged to acquiesce in such action, but where they had no lawful authority to employ one themselves, and the persons employing the truant officer for them had no authority to do so, it cannot be assumed that they were expecting to pay any portion of the salary for the services rendered by such officer, or that the persons employing such officer were expecting them to do so. The facts have none of the elements necessary to create a legal liability upon the part of appellees.

The judgment below being in accordance with these views, it is, therefore, affirmed.